THE FIRST NATIONAL BANK OF CONCORDIA v. EDWARD MARSHALL.

No. 8080.

1. DEPOSITION IN ANOTHER ACTION — *Admissibility.* The deposition of the president of a bank, taken in another action, offered in evidence by the defendant, is inadmissible on the trial of an action brought by the bank where he is present in court so that his oral testimony can be given; but where·he, on the witness-stand, testifies, without objection, after hearing the deposition read, that it is correct, and is his testimony, and where he is examined at length with reference not only to matters mentioned in the deposition, but also with reference to other material facts, and where there is no claim made by the bank that any statement contained in the deposition is untrue, or is contradictory of the statements made by him on the witness-stand, the error in the admission of the deposition becomes unimportant, and does not warrant a reversal of the judgment.

2. STOCK OF MERCHANDISE, *Conflicting Claims to—Letters and Telegrams as Evidence.*  In a controversy between a bank, claiming a stock of merchandise under chattel mortgages, and a sheriff, claiming possession by virtue of divers writs of attachment, where it is claimed by the defendant that the mortgages were made and received to defraud creditors of the mortgagor, letters written by the president of the bank to creditors while the rights of the parties remain undetermined, calculated to influence their action with reference to the collection of their claims, as well as telegrams sent by such creditors to the bank with reference thereto, are admissible in evidence, though written and sent after the execution of the mortgages and after the levy of the attachments.

3. ——— *Void Chattel Mortgage.*  A mortgage taken for the purpose of defrauding creditors of the mortgagor is not merely voidable as to such creditors, but is void.

### *Error from Cloud District Court.*

THIS action was brought by The First National Bank of Concordia against Edward Marshall, sheriff of Cloud county, to recover a stock of merchandise consisting of farm implements, plumbing goods, harnesses, buggies, wagons, barbed wire, windmills, etc., which had been seized by the sheriff under divers writs of attachment issued against L. A. Bartlett.   The plaintiff claimed the property under two chattel mortgages executed by Bartlett on the 4th day of June, 1889 — one to the bank, to secure the payment of three promissory notes aggregating $23,041.87, the other to secure a note to Laing and Wrong for $1,500.   The answer of the defendant was a general denial.   The jury rendered the following verdict : '' We, the jury impaneled and sworn in the above-entitled case, do, upon our oaths, find for the defendant, and that, at the commencement of this action, he was entitled to all the property sought to be recovered in the same ; that that taken from him by the coroner under the writs herein as described therein, and was at the commencement of this action

of the value of $8,782.26.'' The court thereupon rendered a judgment in favor of the defendant for a return of the property, or for the value as fixed by the jury, in case a return could not be had. Plaintiff brings the case to this court. The opinion was filed February 8, 1896.

*Theodore Laing*, for plaintiff in error.

*A. H. Ellis*, and *J. W. Sheafor*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : The first specification of error discussed in the brief of counsel for plaintiff in error is in the admission of the deposition of F. J. Atwood, taken in the case of the Parlin & Orendorff Company *v.* Bartlett, in June, 1889. Atwood was the president and general manager of the plaintiff bank, not only at the time the deposition was taken and of the trial of this action, but at and for a considerable period of time before the chattel mortgages under which the plaintiff claimed were taken. The defense of the sheriff was that the transaction was fraudulent ; that for some time prior to the execution of the mortgages Bartlett had been buying great quantities of goods on the recommendations of Atwood as to his financial standing made to the wholesale dealers ; that Atwood, as the manager of the bank, conspired with Bartlett and assisted him to get these goods on credit, for the purpose of defrauding the sellers, and of securing payment of a large indebtedness to the bank by a mortgage on the goods so purchased. The first attachment against Bartlett was issued in a suit brought by the Parlin & Orendorff Company, and levied on the same day that the chattel mortgages were executed, but after they were filed in the office of the register of deeds. Soon

afterward they took the deposition of Atwood in that case, before a notary public. On the trial of this action he attended as a witness, and testified on behalf of the plaintiff. On cross-examination he was asked some questions with reference to this deposition. In the course of the introduction of testimony on behalf of the defendant this deposition was offered in evidence, and objected to on the ground of incompetency, and · because Mr. Atwood was present. The defendant thereupon called Atwood, and exhibited to him the deposition. He admitted that the deposition was taken and subscribed by him; that he had read it over before signing it; that he was president of the plaintiff bank at the time it was taken, and was still its president and managing officer. The court thereupon overruled the objection, and the plaintiff excepted. The deposition, which is very long and very important, was thereupon read to the jury. It contained Atwood's testimony as to the dealings between Bartlett and the bank, and with reference to various other matters connected with the case. It was error to allow the introduction of the deposition. Although Atwood was the president and managing officer of the bank, he could not bind it by a mere admission, not made in connection with the discharge of any duty nor the transaction of any business for the bank. (*Dodge v. Childs*, 38 Kan. 526; *Tennis v. Rapid Transit Rly. Co.*, 45 id. 503; *Coal Co. v. Dickson*, 55 id. 62.) Was this error prejudicial to the rights of the plaintiff? After concluding the reading of the deposition, Atwood was again called to the witness-stand, and testified, without objection or exception, that he had recently read the deposition, and that he had been present in court while it was read to the jury. He was then asked whether there was any statement con-

tained in the deposition as read which he desired to correct. He made one slight correction, and as to the rest said that, if he were allowed to revise the matter, he would change the wording in several cases but not the sense of it, and that, with the correction he then made, the deposition was correct; that it would be his testimony if he were giving it now; that it was his testimony. On rebuttal, Atwood was again called as a witness for the bank, and testified at length.

No material contradiction between his testimony in the deposition and on the witness-stand is apparent. Atwood, as president, had authority to represent the bank in this litigation. (*National Bank v. Berry*, 53 Kan. 696.) He and the attorney appearing for the bank could bind it by admissions made in the progress of the trial. On the witness-stand, Atwood not only admitted that the deposition had been taken and subscribed by him, but swore that it contained his testimony, and that it was true. This he stated without objection from his counsel, and we think, in view of the full opportunity offered for correcting any misstatement, and also for giving any further testimony desired, that the error in admitting the deposition was cured. Although the practice followed is not to be commended, the plaintiff in error has not pointed out any particular in which it was injured by the manner of getting Atwood's testimony before the jury. The bank nowhere challenges Atwood's truthfulness, but maintains it; nor is any attempt made to point out material error in the testimony contained in the deposition. Where the plaintiff in error asserts the truth of every statement which it contains, we cannot hold that material error was committed in its admission. (*C. K. & W. Rld. Co. v. Prouty*, 55 Kan. 503.)

Error is also alleged in the admission of a letter written by Atwood to the Abbott Buggy Company on June 7, 1889, and a telegram by the buggy company to the bank sent from Chicago on the 8th. It is contended that these were transactions after the attachments were made, and after the occurrence of the events to which they referred, and that they were objectionable for similar reasons to those urged against Atwood's deposition. The letter and telegram were admissible on other grounds. Although the chattel mortgages had been executed and attachments had been levied on the goods, the rights of the parties had not been determined. The bank was still seeking to hold the property as against creditors, and its communications with them, through its president, with reference to litigation pending, or prospective, and with reference to the action they might or ought to take for the protection of their interests, and with reference to the claims of. the bank, were all properly admissible in evidence, because in these matters Atwood spoke for the bank and represented its interests.

Error is claimed in the admission of· the appraisement in the case of Parlin & Orendorff Company v. the bank, but we think it was properly admitted A part of it had been offered in evidence by the plaintiff, and Mr. Belisle, a competent witness, who was one of the appraisers, was called and testified that the value of the goods was correctly set down in the inventory.

We find nothing substantial in the objection to the testimony of Day with reference to his having written a letter to his house which was not read in evidence.

Complaint is made of the following portion of the instructions :

"Of course, if any material false representations were made by Atwood, and were known by him to be

false at the time, and were made for the purpose of concealing Bartlett's true condition, and to enable him to purchase goods when he otherwise could not have done so, then such acts on the part of Atwood would amount to a fraud as to Bartlett's creditors whose claims were thus created, and the bank would have no right to take a mortgage on goods thus obtained ; and, if it did take such mortgage under such circumstances, it would be void absolutely.''

It is contended that a mortgage taken under such circumstances would be voidable only, while the court charged that it would be void. We think the court correctly declared the law as applicable to this case. This was a contention between the bank, claiming under the mortgages, and the sheriff, who represented attaching creditors. As to such creditors, the mortgage was either valid or void. There was no question of voidability as to them, nor do their rights to rescind the sales of goods made to Bartlett on the ground of fraud on the part of the purchaser, and to recover the goods so sold, affect the question in any manner of the validity or invalidity of the plaintiff's mortgages. The plaintiff cannot maintain a cause of action based on a mortgage taken for the purpose of perpetrating a fraud on Bartlett's creditors. ( *Wafer v. Harvey County Bank,* 46 Kan. 597.)

Complaint is made of the form of the verdict, and of the judgment rendered thereon, but we find them sufficient. We have carefully examined the voluminous record brought to this court, and find in it abundant evidence to uphold the verdict and judgment. It is therefore affirmed.

JOHNSTON, J., concurring.

MARTIN, C. J. : I am constrained to dissent from the first point of the syllabus and the corresponding

part of the opinion. We all agree that it was error to permit the reading of the deposition of Atwood taken in another case, and he being not only in the county, but present in the court-room, and that "the practice followed is not to be commended." I think it should be condemned by granting a new trial. The error was not cured, but aggravated and confessed, by calling Atwood again to the witness-stand, to make him admit a second time that he had given the evidence contained in the deposition. It was but a repetition of a flagrant violation of the rules of evidence established by the code of civil procedure. It would have been idle, and perhaps prejudicial to the plaintiff, to have made further objection. The point was already saved by objection and exception. The courts should not permit the law to be broken with impunity by its ministers in the halls devoted to its administration.